IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

ENTERPRISE INFORMATION
MANAGEMENT, INC., et al.

                                    :

   v.                              :   Civil Action No. DKC 13-2131

                                      :

SUPERLETTER.COM, INC.

                                    :

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract action is Defendant's motion to dismiss, or in the alternative, for summary judgment. (ECF No. 8). For the following reasons, an evidentiary hearing will be held on the issue of whether Attachment A is part of the Subcontract Agreement.

**I.  Background**

This case arises out of a contract dispute between Plaintiffs, Enterprise Information Management, Inc. ("EIM") and Enterprise Information Management Europe Limited, Inc. ("EIM Europe Limited") with SuperLetter.com, Inc. ("SuperLetter" or "Defendant"). EIM is a Virginia corporation with its principal place of business in Arlington, Virginia. EIM Europe Limited is EIM's wholly-owned subsidiary and a United Kingdom corporation with its principal place of business also in Arlington, Virginia. EIM and its subsidiary, EIM Europe Limited, deliver

information technology consulting, design, planning, and implementation services for organizations. (ECF No. 2 ¶¶ 8-9). SuperLetter, a commercial hybrid mail service that links distant locations around the globe with an overnight/next day mail service, is a Florida corporation with its principal place of business in Ormond Beach, Florida. (*Id.* ¶¶ 1-3, 7).[1]

On February 28, 2012, SuperLetter entered into a Subcontract Agreement with EIM Europe Limited "to develop an application and perform services as directed in the relevant Statement(s) of Work (SOW) in support of Defendant's Prime Contract with the UK Ministry of Defense – British Forces Post Office ("BFPO" [or "Authority"])." (*Id.* ¶ 10).[2] This Prime Contract between SuperLetter and BFPO was designed to allow SuperLetter's mail services to reach British military personnel serving in locations around the globe. The Subcontract Agreement between EIM Europe Limited and SuperLetter, designed to provide services to support the Prime Contract, was "accepted and agreed to" by Roy Walker, the Chief Executive Officer of

---

[1] SuperLetter links independent agents such as print and mail companies and local postal administrations, allowing "users anywhere in the world to compose letters online and send them to participating locations around the globe where the letters are downloaded, printed, and mailed via the local postal system." (ECF No. 8-2 ¶ 4).

[2] Although the Subcontract Agreement was signed on February 28, 2012, the contract itself provides that "[t]he Agreement shall commence on 9th August 2011." (ECF No. 2-1, at 3).

SuperLetter.Com, and Chloe A. Maxent, Vice President, Global Business Support of EIM Inc. (ECF No. 2-1, at 12).[3] Ms. Maxent signed the contract on behalf of EIM, but the Subcontract Agreement identifies "EIM Europe Limited" and "SuperLetter" as the only parties to the contract. The Subcontract Agreement provides that it shall last for "a period of 8 years, 7 months and 22 days, i.e., until 31st March 2020 subject to [BFPO's] right of earlier termination under other Conditions of Contract." (*Id.*, at 3).

The following terms in the Subcontract Agreement are also relevant here. Section 1.6 provides that "General terms and conditions provisions of the UK Ministry of Defence are attached as exhibit: CTT DOC 24 SCHED 2 TERMS AND CONDITIONS. Compliance with these terms and conditions is required by the Subcontractor." (*Id.* at 4). This referenced document, which is Attachment A, includes "general and special" contract terms and conditions from Defendant's Prime Contract with BFPO. Specifically, it includes a table of contents enumerating multiple DEFCONS, which is a term used for UK Ministry of

---

[3] During the relevant time period, Chloe Maxent was also an officer of EIM Europe Limited. (*See* ECF No. 11-1 ¶ 8, Bittonti Affidavit).

Defence Conditions.[4]   DEFCON 529 includes a forum-selection clause and choice-of-law provision. It states:

> 1.  The Contract shall be considered as a contract made in England and subject to English Law.
>
> 2.  Subject to DEFCON 530 and without prejudice to the dispute resolution process set out in that Condition, each party hereby irrevocably submits and agrees to the exclusive jurisdiction of the Courts of England to resolve, and the laws of England to govern, any actions, proceedings, controversy or claim of whatever nature arising out of or relating to the Contract or breach thereof.
>
> 3.  Other jurisdictions may apply solely for the purpose of giving effect to this Condition and for the enforcement of any judgment, order or award given under English law.

(ECF No. 8-5). DEFCON 530 includes an arbitration provision and states as follows:

> 1. The parties will attempt in good faith to resolve any dispute or claim arising out of or relating to this Contract through negotiations between the respective representatives of the parties having authority to settle the matter, which attempts may include the use of any Alternative Dispute Resolution (ADR) procedure on which the parties may agree.
>
> 2. In the event that the dispute or claim is not resolved by negotiation, or where the parties have agreed to use an ADR procedure,

---

[4] The Subcontract Agreement defines "DEFCON" as "published terms and conditions of the Authority that are incorporated in this Agreement by reference only." (ECF No. 2-1, at 2).

> by the use of such procedure, the dispute
> shall . . . be referred to arbitration.

(ECF No. 8-6).

This dispute arose out of Defendant's early termination of the contract because Plaintiffs closed their London office and continued operations in the United States. (*See* ECF No. 2 ¶¶ 15-17). Specifically, Plaintiffs allege that "[EIM Europe Limited] closed its London office . . . on January 31, 2013," (ECF No. 2 ¶ 15), but continued to perform its obligations under the contract. Plaintiffs assert that "Defendant wrongfully terminated the Contract citing that Plaintiff [EIM Europe Limited] was in breach of contract for closing its London office." (Id. ¶ 17). Section 11.1 of the Subcontract Agreement provides that "Subcontractor will obtain the prior agreement of Contractor and the Authority to store or process such personal data at sites outside the United Kingdom." (ECF No. 2-1, at 7). The parties disagree about whether the Subcontract Agreement required EIM Europe Limited to maintain a London office as a condition of the contract.

Plaintiffs filed a breach of contract action in the Circuit Court for Montgomery County in Maryland on June 26, 2013. (ECF No. 1 ¶ 1). In their five-count complaint, Plaintiffs seek judgment of approximately $1,085,641.86 based on a breach of contract theory. Specifically, Plaintiffs assert that Defendant

breached the Subcontract Agreement "when the Defendant withheld 10% of the final Contract invoice, terminated maintenance support payments as required by the Contract, and withheld payments for the margin on software revenue as required by the Contract." (ECF No. 2 ¶ 19). Furthermore, Plaintiffs state that Defendant breached the Subcontract Agreement by failing to notify their designated representative regarding Defendant's termination of the Contract, (*id.* ¶ 43), and by recruiting and hiring two of EIM Europe Limited's former employees without obtaining the company's prior consent "in accordance with the one (1) year waiting period requirement post termination of such employee's employment contract with Plaintiff" (*id.* ¶¶ 48-49).

On July 23, 2013, Defendant removed the action to this court on the basis of diversity jurisdiction. (ECF No. 1). Three days later, on July 26, 2013, Defendant filed the instant motion to dismiss, or in the alternative, for summary judgment. (ECF No. 8). Defendant raises several grounds for dismissal: (1) lack of standing because EIM is not a party to the Subcontract Agreement; (2) improper venue; (3) *forum non conveniens*; and (4) binding arbitration provision incorporated into the Subcontract Agreement. Plaintiffs filed an opposition on August 12, 2013 (ECF No. 11), and Defendant replied on August 29, 2013 (ECF No. 13).

## II.  Standard of Review[5]

Although no Federal Rule of Civil Procedure expressly addresses motions to dismiss or stay pending arbitration, the United States Supreme Court has described arbitration clauses as "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."  *Scherk v. Alberto-Culver Co.*, 417 U.S.

---

[5]  Defendant asserts multiple arguments in favor of dismissal, including improper venue pursuant to Rule 12(b)(3) due to a forum selection clause in DEFCON 529.  As stated above, Defendant removed this action from the Circuit Court for Montgomery County in Maryland.  When an action is removed from state court to federal court, venue is governed exclusively by the federal removal statute, 28 U.S.C. § 1441(a).  As explained by the United States Supreme Court, "Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'" *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953) (*quoting* 28 U.S.C. § 1441(a)); *see also Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001) ("by requiring removal to the district court for the district in which the state action is pending," Section 1441(a) "properly fixes the federal venue in that district").  Because, under *Polizzi*, federal venue is proper when a case has been removed to federal court in accordance with Section 1441(a), a defendant's post-removal Rule 12(b)(3) motion to dismiss for improper venue must be denied, including where the motion is premised on a contractual forum selection clause.  *See MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1224484, at *4 n.7 (D.Md. Mar. 26, 2013)(denying a Rule 12(b)(3) motion based on a forum selection clause following the defendant's voluntary and proper removal).  Removal by Defendant, however, did not waive its right to raise the arbitration provision as a bar to litigation.  *In re Mercury Constr. Co.*, 656 F.2d 933, 940 (4th Cir. 1981), *aff'd, Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1 (1983).  The *forum non conveniens* argument will be addressed if the arbitration provision is found to be inapplicable.

506, 519 (1974). In *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544 (4th Cir. 2006), the United States Court of Appeals for the Fourth Circuit held that a motion to dismiss based on a forum-selection clause should be treated as a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). *Id.* at 550. The Fourth Circuit has since cited *Sucampo* with approval in considering under Rule 12(b)(3) a motion to dismiss based on an arbitration provision. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365-66 & n.9 (4th Cir. 2012). Under Rule 12(b)(3), "a court is free to look at matters outside of the pleadings, however, the court still must draw all reasonable inferences in the light most favorable to the plaintiff." *Costar Realty Information, Inc. v. Field*, 612 F.Supp.2d 660, 672 (D.Md. 2009). As Judge Hollander recently discussed in *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F.Supp.2d 321, 332 (D.Md. 2012):

> [A] motion to dismiss for improper venue, filed under Rule 12(b)(3), "allows the court to freely consider evidence outside the pleadings, unlike under a 12(b)(6) motion." *Sucampo*, *supra*, 471 F.3d at 550; *accord Aggarao*, *supra*, 675 F.3d at 365-66. However, unless an evidentiary hearing is held with respect to the motion, the plaintiff is obliged "to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao*, 675 F.3d at 366. In assessing a Rule 12(b)(3) motion on the basis of the papers, the court must "view the facts in the light most favorable to the plaintiff." *Id.; see Estate of Myhra v.*

8

*Royal Caribbean Cruises, Ltd.*, 695 F.3d
1233, 1239 (11th Cir.2012) ("When the
parties submit conflicting affidavits, the
court, *in the absence of an evidentiary
hearing*" on a Rule 12(b)(3) motion, must "
'give greater weight to the plaintiff's
version of the jurisdictional facts and ...
construe such facts in the light most
favorable to the plaintiff.'") (emphasis
added) (citation omitted); *Murphy v.
Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140
(9th Cir. 2004) ("Upon holding an
evidentiary hearing to resolve material
disputed facts, the district court may weigh
evidence, assess credibility, and make
findings of fact that are dispositive on the
Rule 12(b)(3) motion."); *accord Continental
Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d
727, 733 (7th Cir. 2005); *Gulf Ins. Co. v.
Glasbrenner*, 417 F.3d 353, 355 (2d
Cir.2005).

## III. Analysis

The parties' assent to the Subcontract Agreement itself is
not in dispute here. Rather, Plaintiffs argue that they did not
agree to arbitration under the Subcontract Agreement because
DEFCON 530 "was not included in the Subcontract, was not
properly incorporated by reference, was not included in the
exhibit to the Subcontract, and was not provided to EIM at the
time that the Subcontract was executed." (ECF No. 11, at 9).
Alternatively, Plaintiffs argue that the arbitration provision
only applies to disputes between Defendant and the United
Kingdom because the arbitration provision is included in the
Prime Contract. Plaintiffs further argue that Defendant cannot
now seek to enforce the arbitration provision because it failed

to engage in good-faith negotiations, which Plaintiffs assert is a condition precedent to arbitration. Finally, Plaintiffs contend that the instant litigation should be stayed rather than dismissed.

## A. Incorporation By Reference

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986) (*quoting United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *see also Mattingly v. Hughes Electronics Corp.*, 147 Md.App. 624, 632 (2002) ("Whether there is an agreement to arbitrate the parties' dispute is a legal question of contract interpretation."). As the Fourth Circuit recently noted, "[t]he Supreme Court has directed that [courts] 'apply ordinary state-law principles that govern the formation of contracts' when assessing whether the parties agreed to arbitrate a matter." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013) (*citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4th Cir. 2012) ("The question of whether an enforceable arbitration agreement exists . . . is a matter of contract interpretation governed by state law"). "Thus state law determines questions

"concerning the validity, revocability, or enforceability of contracts generally," *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1985), but the Federal Arbitration Act, 9 U.S.C. § 2 (1994) . . . 'create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24." *Intern. Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000).[6]

---

[6] Plaintiffs state in a footnote in the opposition that Virginia law applies to the Subcontract "based on EIM's signing of the agreement within the Commonwealth of Virginia" (ECF No. 11, at 9 n.1). Plaintiffs also later state that "the Subcontract is arguably subject to the law of the United Kingdom." (*Id.* at 16). Defendant does not argue which law applies, although it cites federal law and English law in propounding arguments in favor of arbitration. In a federal diversity case, as the instant case, the court must apply the choice of law rules of the forum state, Maryland. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *see also Allstate Ins. Co. v. Hart*, 327 Md. 526 (1992) (noting that Maryland courts follow the principle of *lex loci contracus* in determining which law to apply in interpreting contracts). The parties have not identified a material divergence between potentially applicable law on any of the issues, making it unnecessary to resolve any choice of law issue. *See Iraq Middle Market Development Foundation v. Al Harmoosh,* 769 F.Supp.2d 838, 840 n.1 (D.Md. 2011) (the court concluded that because the claims at issue would be subject to arbitration regardless, it need not to decide which law governed contract interpretation in a case where the parties disputed whether Maryland or Iraqi contract law applied); *see also Central Telephone Co. of Va. v. Sprint Communications Co. of VA, Inc.*, 759 F.Supp.2d 789, 798 n.4 (E.D.Va. 2011) ("Virginia law and federal Fourth Circuit common law are representative of other states' law and other circuits' law on contract interpretation.").

The burden of proving an agreement to arbitrate rests upon the party seeking arbitration. *In re Mercury Constr. Co.*, 656 F.2d at 939. A duty to arbitrate can be based on the doctrine of incorporation. *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 978 (4th Cir. 1985). In fact, the Fourth Circuit has held that "[i]t is well settled that under the Federal Arbitration Act, an agreement to arbitrate may be validly incorporated into a subcontract by reference to an arbitration provision in a general contract." *Maxum Foundations, Inc.*, 779 F.2d at 978. Here, Plaintiffs' primary contention is that they should not be bound by the arbitration provision in DEFCON 530 because it was not properly incorporated by reference in the Subcontract Agreement. "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Logan & Kanawha Coal Co., LLC v. Detherage Coal Sales, LLC*, No. 12-1128, 2013 WL 1150490, at *2 (4th Cir. Mar. 21, 2013) (applying West Virginia law and *citing Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003)); *see also Hertz Corp. v. Zurich Amer. Ins. Co.*, 496 F.Supp.2d 668, 675 (E.D.Va. 2007) ("[i]t is axiomatic in the law of contracts that, in order to incorporate a secondary document into a primary document, the identity of the secondary

document must be readily ascertainable."). "The law does not set a particularly high threshold for incorporation of extrinsic documents." *Central Telephone Co. of Va. v. Spring Communications Co. of Va., Inc.*, 759 F.Supp.2d 789, 799 (E.D.Va. 2011). A broadly worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement. *See Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 63 (2[d] Cir. 2007). Furthermore "it is not necessary that the primary document provide explicitly that it 'incorporates' the secondary document." *Central Telephone Co.*, 759 F.Supp.2d at 800; *see also Bd. of Trs., Sheet Metal Workers' National Pension Fund v. DCI Signs & Awnings, Inc.*, No. 1:08cv15, 2008 WL 640252, at *3 (E.D.Va. Mar. 5, 2008) (stating that the exact language used is not important provided that the primary document plainly refers to another document).

Here, Attachment A appears to list some, but maybe not all, of the DEFCON provisions. If it is part of the contract, the requirements of incorporation by reference would be satisfied. The Subcontract Agreement plainly refers to other documents, including CTT DOC 24 SCHED 2 TERMS AND CONDITIONS. First, the Subcontract Agreement defines "DEFCON" as "published terms and conditions of the Authority that are incorporated in this Agreement by reference only." (ECF No. 2-1, at 2). It further

references the Internet website that contains DEFCON abstracts. (*Id.*).[7] Plaintiffs argue that this definition of "DEFCON" in the Subcontract Agreement "does [not] provide any indication as to which terms and conditions might later be incorporated; rather, it merely defines the term DEFCON to mean only those terms that may be identified and incorporated elsewhere." (ECF No. 11, at 10). Plaintiffs may be right that introductory language on the cover page in the Subcontract Agreement referencing DEFCON provisions *alone* may not be enough properly to incorporate the arbitration provision from the Prime Contract. *See, e.g., Wilson v. Towers*, 55 F.2d 199, 200 (4th Cir. 1932) (courts may look to introductory language to resolve ambiguity, but not to create it). But in several places, the Subcontract Agreement references the separate document, CTT DOC 24 SCHED 2 TERMS AND CONDITIONS, which identifies, *inter alia*, the arbitration provision. *See, e.g., U.S. on Behalf of Dep't of Labor v. Ins. Co. of North America*, 131 F.3d 1037, 1042 (D.C.Cir. 1997) ("When a contract incorporates a regulation by reference, that

---

[7] Specifically, the Subcontract Agreement provides that DEFCON abstracts may be found at http://www.metasums.co.uk/uploads/asset_file/MOD%20Defence%20Con ditions%20Guide.pdf. (ECF No. 2-1, at 2) (last visited on November 1, 2013). This link includes an abstract of DEFCON 530, labeled Dispute Resolution (English Law), and provides that "[w]here a dispute cannot be resolved by negotiation or Alternative Dispute Resolution, this DEFCON requires that the dispute be referred to arbitration except where the dispute is referred to the Review Board for Government Contracts."

regulation becomes a part of the contract for the indicated purposes as if the words of that regulation were set out in full in the contract").

Section 1.6 of the Subcontract Agreement provides that "General terms and conditions provisions of the UK Ministry of Defence are attached as exhibit: CTT DOC 24 SCHED 2 TERMS AND CONDITIONS. Compliance with these terms and conditions is *required* by the Subcontractor." (*Id.* at 4) (emphasis added).[8] Next, Section 4 of the Subcontract Agreement references CTT DOC 24 SCHED 2 TERMS AND CONDITIONS, providing that "[i]nvoices submitted to Contractor must be in accordance with the terms and conditions of Attachment A (CTT DOC 24 SCHED 2 TERMS AND CONDITIONS) to this Agreement." (*Id.*). CTT DOC 24 SCHED 2 TERMS AND CONDITIONS lists "general and special conditions" of the contract. Included in the "general terms and conditions" is the arbitration provision in question, DEFCON 530, which provides, in relevant part:

> 2. In the event that the dispute or claim is not resolved by negotiation, or where the parties have agreed to use an ADR procedure, by the use of such procedure, *the dispute shall . . . be referred to arbitration.*

---

[8] The Subcontract Agreement defines EIM Europe Limited as the Subcontractor. The opening paragraph of the Subcontract Agreement also refers to SuperLetter and EIM Europe Limited as "the Parties" to the contract.

(ECF No. 8-6) (emphasis added).  By its plain terms, Section 1.6 of the Subcontract Agreement *requires* the Subcontractor, EIM Europe Limited, to comply with the terms of CTT DOC 24 SCHED 2 TERMS AND CONDITIONS, as contained in Attachment A, including the arbitration provision in DEFCON 530.

"When a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument . . . [t]he incorporated matter is to be interpreted as part of the writing."  11 Williston on Contracts, § 30:25 (4th ed. updated 2013).  Here, the explicit references to CTT DOC 24 SCHED 2 TERMS AND CONDITIONS throughout the Subcontract Agreement made this document part of the Subcontract Agreement and bound the Subcontractor, EIM Europe Limited, to the terms of this document.[9]  *See Sinclair Broadcast Group, Inc. v. Interep National Radio Sales, Inc.*, No. CCB-05-326, 2005 WL 1000086, at *3 (D.Md. Apr. 28, 2005) ("In this case, the letter agreement explicitly refers to the forthcoming station contracts numerous times.  Based on this language, the court finds that the parties did not consider the letter to be a complete and integrated agreement, but rather that the station

---

[9] Although Defendant argues that EIM lacks standing because it is not a party to the Subcontract Agreement (notwithstanding Chloe Maxent's signature on behalf of EIM), the court need not reach this issue because both Plaintiffs rely on the Subcontract Agreement as the basis for a cause of action.

contracts would complete the transaction.  Thus, the documents

may be interpreted together, thereby reading the arbitration

provision in the station contracts into the letter agreement.").

Plaintiffs contend, however, that unlike the other

attachments referenced in the Subcontract Agreement (*e.g.,* CTT

DOC 25 SCHED 2 ANNEX A CAPEX PRICING, a document Plaintiffs

include as an exhibit to the complaint), CTT DOC 24 SCHED 2

TERMS AND CONDITIONS was not included as an exhibit to the

Subcontract Agreement as indicated in Sections 1.6 and 4.

Plaintiffs thus conclude that they are not bound by the terms of

CTT DOC 24 SCHED 2 TERMS AND CONDITIONS, which identifies DEFCON

530 "Dispute Resolution (English)."  "[I]n order to uphold the

validity of terms incorporated by reference, it must be clear

that the parties to the agreement had knowledge of and assented

to the incorporated terms."  11 Williston on Contracts, § 30:25

(4th ed. updated 2013).

The complete text of the applicable DEFCONS may not have

had to be attached in order to be incorporated, as courts have

held in other contexts, such as when interpreting construction

contracts.  In a case involving a breach of a written contract

to build a house, the Maryland Court of Appeals reversed the

lower court, stating:

>          The lower court seemingly attached
>     significance to the fact that the plans and
>     specifications were not physically fastened

> to the contract document which was executed,
> although it specifically and explicitly
> referred to both. In this situation
> physical attachment has not the significance
> so attributed to it. It is settled that
> where a writing refers to another document
> that other document, or so much of it as
> referred to, is to be interpreted as part of
> the writing . . . 'The annexation of the
> copy (of the) specifications was not a
> condition on which the validity of the
> agreement depended. If annexed the
> identification might have been more
> satisfactory, but without that, the contents
> of the plans and specifications, so far as
> referred to in the agreement executed,
> became constructively a part of it, and in
> that respect made one instrument.'

*Ray v. Eurice*, 201 Md. 115, 128 (1952); *see also Central Telephone Co.*, 759 F.Supp.2d at 800 (finding that under Virginia law, the text of an interconnection agreement incorporated tariffs and access rates that were part of a separate document not attached to the agreement). Accordingly, the party challenging incorporation need not have actually received the incorporated terms in order to be bound by them, especially when both parties are sophisticated business entities. *See* 11 Williston on Contracts § 30:25 (4th ed. updated 2013); *see also Standard Bent Glass*, 333 F.3d at 447 n.10.

Thus, although Plaintiffs need not have received a copy of the pertinent DEFCONS in order to be bound by their terms, Plaintiffs need to know which DEFCON provisions were incorporated. Then, if the contents of the separate document

could have been ascertained, and incorporation of the document would not result in surprise or hardship, Plaintiffs would be bound.

This case is somewhat similar to the problem in *Silkworm Screen Printers, Inc. v. Abrams*, No. 91-1631, 1992 WL 317187 (4th Cir. 1992). There, the Fourth Circuit vacated a district court ruling denying a motion to dismiss because the parties disputed whether the incorporated contract containing the arbitration clause was presented to Plaintiff. The contract between the parties in *Silkworm*, however, explicitly made providing the incorporated contract a condition of the contract. *Id.* at *1 ("The Eastern Commodities-Silkworm contract provided 'sellers to present original contract with PRC Mfgrs. which forms a part of this contract.'"). The Fourth Circuit reasoned that presenting the contract to Silkworm was a condition precedent to incorporation of the contract and directed the district court to conduct an evidentiary hearing on the issue.

The current record establishes that Plaintiffs were on notice that provisions from the DEFCONS were incorporated into their Subcontract Agreement, but there is some dispute about how, or whether, they knew precisely which provisions were so incorporated. Under the circumstances, the most direct and efficient way to resolve the problem is to conduct an evidentiary hearing.

19

**B. Applicability of DEFCON 530 to Disputes Between the Parties**

If it is found that Attachment A is part of the Subcontract Agreement, Plaintiffs' position that DEFCON 530 does not apply to disputes between Plaintiffs and SuperLetter, but only to disputes between SuperLetter and BFPO because the arbitration provision was originally included in the Prime Contract between the two latter entities, will be rejected. (*See* ECF No. 11, at 12-13). As Williston explains, "parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are *not* parties." *See* 11 Williston on Contracts, §§ 30:25 (4th ed. updated 2013) (emphasis added); *see also Ronan Assocs., Inc. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs, AFL-CIO*, 24 F.3d 447, 449 (2nd Cir. 1994) ("[t]he fact that neither Ronan nor 101 Sixth entered into a collective bargaining agreement with Local 94 is not material. Parties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements to which they are not party."). In this case, the Subcontract Agreement between Plaintiffs and SuperLetter explicitly refers to CTT DOC 24 SCHED 2 TERMS AND CONDITIONS in numerous places. The fact that the terms and conditions, including the arbitration provision found in DEFCON 530, are

contained in the Prime Contract between SuperLetter and BFPO does not detract from the requirement that *Plaintiffs* have agreed to comply with them by executing the Subcontract Agreement and are therefore bound by them. *See Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001) ("the reach of an arbitration clause is not restricted to those causes of action brought under the contract containing the clause, unless the parties draft a clause so restricted in scope."); *see also Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F.3d 262, 265 (4th Cir. 2000) (dispute growing out of contract with no arbitration clause, but which stated parties had "rights and remedies" under another contract with such clause, is arbitrable).

## C. Condition Precedent to Arbitration

Plaintiffs also argue that the dispute cannot be submitted to arbitration because SuperLetter did not comply with the pre-condition contained in DEFCON 530 which provides that before arbitration, the parties engage in good faith negotiations, or where the parties have agreed to use an ADR procedure, by the use of such procedure.[10] Specifically, DEFCON 530 provides that:

---

[10] Defendant first argues in its reply brief – by reference to an affidavit from its Chairman and several email exchanges with Plaintiffs – that the parties did indeed negotiate, albeit to no avail. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground*

> 2. In the event that the dispute or claim is
> not resolved by negotiation, or where the
> parties have agreed to use an ADR procedure,
> by the use of such procedure, the dispute
> shall, unless it is a question to be
> referred to the Review Board for Government
> Contracts pursuant to DEFCON 650 or DEFCON
> 650A, be referred to arbitration.

An essential question presented by Plaintiffs' argument and not addressed in either party's brief, however, is whether SuperLetter's satisfaction of a condition precedent would be a "gateway" matter to be decided by the court rather than an arbitrator. See *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Under federal law, a gateway dispute for judicial determination raises "a question of arbitrability," such as "whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* All other issues are presumptively reserved for arbitration, as explained by the United States Supreme Court:

> [T]he Court has found the phrase "question
> of arbitrability" *not* applicable in other
> kinds of general circumstance where parties
> would likely expect that an arbitrator would
> decide the gateway matter. Thus
> "'procedural' questions which grow out of
> the dispute and bear on its final
> disposition" are presumptively *not* for the
> judge, but for an arbitrator, to decide.

*Package Sys., Inc.*, 451 F.Supp.2d 731, 734 (D.Md. 2006). In any event, as will be seen, an arbitrator should decide whether any conditions precedent to arbitration have been met.

> *John Wiley [& Sons, Inc. v. Livingston*, 376
> U.S. 543,] 557 [(1964)] (holding that an
> arbitrator should decide whether the first
> two steps of a grievance procedure were
> completed, where these steps are
> prerequisites to arbitration). So, too, the
> presumption is that the arbitrator should
> decide "allegation[s] of waiver, delay, or a
> like defense to arbitrability." *Moses H.*
> *Cone Memorial Hospital [v. Mercury Const.*
> *Corp.*, 460 U.S. 1,] 24-25 [(1983)]. Indeed,
> the Revised Uniform Arbitration Act of 2000
> (RUAA), seeking to "incorporate the holdings
> of the vast majority of state courts and the
> law that has developed under the [Federal
> Arbitration Act]," states that an
> "arbitrator shall decide whether a condition
> precedent to arbitrability has been
> fulfilled." RUAA § 6(c), and comment 2, 7,
> U.L.A. 12-13 (Supp. 2002).

*Id.* at 84-85 (emphasis in original). The Supreme Court thus

held that, "in the absence of an agreement to the contrary . . .

issues of procedural arbitrability, i.e., whether prerequisites

such as time limits, notice, laches, estoppel, and other

conditions precedent to an obligation to arbitrate have been

met, are for arbitrators to decide." *Id.* at 85.

A federal appellate court's analysis of an issue similar to

the one presented in this case is instructive. *See Dialysis*

*Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367 (1st Cir.

2011). In *Dialysis*, the written agreement contained a dispute

resolution/arbitration provision stating that the parties "shall

use good faith negotiation to resolve any dispute that may arise

under this Agreement. In the event [the parties] cannot reach

agreement on any issue, such issue will be settled by binding arbitration." *Id.* at 371. The court addressed arguments that the provision contained a condition precedent to arbitration that had not been satisfied, but concluded that the party resisting arbitration had "not rebutted the presumption that the arbitrator should decide whether the parties complied with such a procedural pre-requisite to arbitration." *Id.* at 383 (*citing Hawsam*, 537 U.S. at 84).

The same conclusion is appropriate here: an arbitrator should decide whether the parties have satisfied any procedural preconditions to arbitration of this dispute.[11] *See John Wiley &*

---

[11] Plaintiffs also attempt to argue the merits of the lawsuit concerning Defendant's alleged wrongful termination of the contract. Plaintiffs assert that because Defendant breached certain provisions of the Subcontract Agreement, it should be prohibited from attempting to enforce other contractual terms, including the arbitration provision. The merits of Plaintiffs' breach of contract claims, however, are irrelevant to the validity and enforceability of the broad arbitration provision in DEFCON 530, which covers "any dispute or claim arising out of or relating to this [c]ontract." (ECF No. 8-6 ¶ 1). Furthermore, the court in *U.S. ex rel Alamo Envt. Inc. v. Cape Env. Mgt. Inc.* held that an arbitrator should decide whether a precondition was met where plaintiff's arguments in opposition to arbitration "also bear on the merits of the parties' dispute." No. CIV-11-482-D, 2012 WL 6726571, at *8 (W.D.Okla. Dec. 27, 2012). Similarly, Plaintiffs here allege that SuperLetter engaged in conduct that failed to satisfy contractual obligations. The court in *Alamo* further reasoned that an arbitrator should decide the "condition precedent" issue because "the specific condition on which [plaintiff] relies to avoid arbitration – good faith negotiation – is a phrase subject to interpretation and application of relevant facts determined by a fact-finder." *Id.*

*Sons, Inc.*, 376 U.S. at 557-59 (holding that an arbitrator should decide whether the first steps of a grievance procedure were completed, where these steps are pre-requisites to arbitration).

### D. Dismissal or Stay of the Litigation

Plaintiffs argue that even if the arbitration provision in DEFCON 530 is applicable, the court should stay, rather than dismiss, this action. (*See* ECF No. 11, at 16). Ordinarily, the "proper course of action when a party seeks to invoke an arbitration clause is to *stay* the proceedings pending arbitration rather than to dismiss outright." *Aggarao*, 675 F.3d at 376 n. 18 (*citing Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005)(emphasis in original)). Fourth Circuit case law, however, indicates that dismissal, rather than a stay, may be "a proper remedy when *all* of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see also Seney v. Rent-A-Center, Inc.*, 909 F.Supp.2d 444, 454-55 (D.Md. 2012) (dismissing action where all of the issues presented in the case were arbitrable). Here, the arbitration provision applies to "any dispute or claim arising out of or relating to [the] Contract." (ECF No. 8-6). The resolution of all of Plaintiffs' claims turns on whether Defendant wrongfully terminated the Subcontract Agreement or violated several

provisions thereof -- this clearly fits within the ambit of the arbitration provision in DEFCON 530. Accordingly, this case falls squarely in line with *Choice Hotels* and would warrant dismissal.[12]

## IV. Conclusion

For the foregoing reasons, it is necessary to convene an evidentiary hearing to resolve the factual dispute as to Plaintiffs' knowledge of the list of DEFCONS to be incorporated

---

[12] Plaintiffs contend that arbitration is not required to be held in the United Kingdom. (*See* ECF No. 11 at 16). Although DEFCON 530 does not specify an arbitration forum, it provides that "[u]nless otherwise agreed in writing by the parties, the arbitration and this Condition shall be governed by the provisions of the Arbitration Act 1996." (ECF No. 8-5). Furthermore, DEFCON 529 includes a forum-selection clause and provides that "[s]ubject to DEFCON 530 and without prejudice to the dispute resolution process set out in that Condition, each party hereby irrevocably submit and agrees to the exclusive jurisdiction of the Courts of England to resolve, and the laws of England to govern, any actions, proceedings, controversy or claim of whatever nature arising out of or relating to the Contract or breach thereof." (ECF No. 8-6).

Under the FAA, "[w]hen a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings, 9 U.S.C. § 3, and to compel arbitration." *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999). Section 4 of the FAA, however, states that "[t]he hearings and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. This has been interpreted to mean that a federal district court may *not* compel arbitration outside its own district. *See M.C. Const., Corp. v. Gray Co.*, 17 F.Supp.2d 541, 548 (W.D.Va. 1998). As Defendant points out, "[a]s a practical matter, because the proper forum for this dispute is before an arbitration panel, that panel may be best suited for determining the venue for that proceeding." (ECF No. 13, at 17 n.12). The court agrees.

into the Subcontract Agreement.  A telephone conference will be held to schedule the evidentiary hearing.  A separate order will follow.

                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge